OPINION
{¶ 1} Appellant Donald L. Cheatam appeals his conviction on one count of Robbery in violation of R.C. 2911.02(A)(2) from the Richland County Court of Common Pleas. He was sentenced to six years in prison. Appellee is the State of Ohio.
 STATEMENT OF CASE AND FACTS {¶ 2} On July 6, 2006 at approximately 1:40 am, Edward Gibson and John Perry were returning to Gibson's apartment after attending a party. Gibson lived in an apartment above the Double Diamond Bar on Grace Street in Mansfield, Ohio. It was dark outside but there was a street light across the street and a light illuminated the entrance to Gibson's residence. Perry stopped in the parking lot to converse with a friend.
 {¶ 3} Gibson proceeded upstairs to his apartment. A man approached him and asked him if the bar was closed. Gibson said "yes" and continued up the steps. The man grabbed Gibson's back, shoved him up the stairs and against the apartment door. The man asked Gibson how much money he had. Gibson stated he did not have any money.
 {¶ 4} When Gibson started to turn around, the man warned him: "[d]on't turn around, I've got a gun and I will hurt you." Gibson, a sixty-five year old man, was afraid, so he complied. The man went through his pockets and took his wallet and cell phone.
 {¶ 5} Perry heard the commotion and he came around the corner to investigate. He observed Gibson on the steps with a man. Perry asked what had happened; Gibson replied that the man had taken his wallet and cell phone. Perry confronted the man and the man stated that Gibson owed him twenty dollars for crack. While this conversation took place, Gibson turned around and looked at the face of his attacker. *Page 3 
 {¶ 6} The three men were standing between three and five feet apart during this exchange. The man fled the scene. Perry attempted to chase after the man and briefly grappled with him on the ground; meanwhile, Gibson called the police.
 {¶ 7} Officer Foti arrived within minutes and both men were able to give a description of the robber. They described the man as a black male wearing glasses and wearing a jersey style shirt with blue and white on it.
 {¶ 8} The description was dispatched to the police in the area. Officer Dittrich was on patrol in the area of the robbery. He observed appellant walking down the street. Appellant matched the description aired by dispatch. Appellant waved at Officer Dittrich, but when the officer attempted to speak to him, appellant ran. Appellant eluded the officer by running through yards and between houses.
 {¶ 9} Officer Gillis and Sgt. Skropits were walking through the neighborhood looking for the robbery suspect. In the yard of 248 First Avenue, Sgt. Skropits found a wallet lying in the grass. The officers decided to check the porch at this address. Sgt. Skropits looked over the porch rail and saw appellant lying on the floor of the porch attempting to hide under a chair. Appellant was wearing a two-tone blue Cleveland Indians jersey with white lettering. A pair of glasses was found in appellant's pocket.
 {¶ 10} The officers took appellant into custody and found a cell phone lying on the porch near where appellant had been hiding. Appellant was also in possession of counterfeit crack cocaine and a silver push rod (used to push crack through a pipe) at the time of his arrest. A crack pipe was also found on the porch. Appellant initially told the officers his name was Andre Hughes. When Officer Gillis, who was familiar with *Page 4 
appellant, confronted appellant about using a false name, appellant eventually stated that his name was Donald Cheatam.
 {¶ 11} Officer Foti arrived and transported appellant back to the scene of the robbery, When they arrived at Grace Street approximately a half an hour after the robbery, Gibson was given the opportunity to view appellant in the back of the cruiser. Gibson immediately and without hesitation identified appellant as the man who robbed him. Gibson also identified his wallet and cell phone which were found near appellant at the time of his arrest.
 {¶ 12} Gibson and Perry were transported to the police station to write statements. At the station, Perry was given the opportunity to view the appellant in a room. Perry immediately identified appellant as the man who robbed Gibson. This identification took place approximately 40 minutes after the robbery.
 {¶ 13} On August 10, 2006, the Richland County Grand Jury indicted appellant on one count of robbery. On August 31, 2006, Attorney Jerry Thompson was appointed to represent appellant and a notice of a September 28, 2006 trial date was sent to defense counsel on September 11, 2006. Thereafter the parties engaged in discovery and on September 18, 2006, defense counsel filed a Motion to Suppress.
 {¶ 14} On September 27, 2006, the trial court conducted a hearing on the Motion to Suppress. At the close of the hearing, the trial court verbally denied the Motion to Suppress and stated its reasoning. On the same day as the oral hearing on the suppression motion, defense counsel filed a Motion for Continuance of the trial. Defense counsel argued that he was appointed only 27 days before trial. Furthermore, he did not receive the trial notice until 17 days prior to trial. Defense counsel also stated *Page 5 
that he received the State's discovery only 15 days prior to trial. In addition, he had not received the transcript of the victim's testimony at the preliminary hearing which he had requested. The trial court denied the motion finding that defense counsel had adequate time to prepare and the transcript was not necessary because the victim testified at the suppression hearing. The trial court judge expressed: "[w]e need to move these cases along. This is one that is set for trial tomorrow." T. of Suppression Hearing, September 27, 2006 at 38.
 {¶ 15} On September 28 and 29, 2006, a jury trial was held. The jury found appellant guilty of one count of robbery in violation of R.C. § 2911.02(A)(2). The trial court sentenced appellant to six years in prison.
 {¶ 16} On October 5, 2006, the trial court issued a Judgment Entry denying the Motion to Suppress. On October 24, 2006, appellant appealed, setting forth the following assignments of error:
 ASSIGNMENTS OF ERROR {¶ 17} "I. THE TRIAL COURT COMMITTED PLAIN AND PREJUDICIAL ERROR BY DENYING THE MOTION OF THE DEFENDANT TO CONTINUE THE TRIAL OF THE CASE.
 {¶ 18} "II. THE TRIAL COURT COMMITTED PLAIN AND PREJUDICIAL ERROR BY OVERRULING THE MOTION TO SUPPRESS THE IDENTIFICATION OF THE DEFENDANT BY TWO EYE WITNESSES AS BEING UNDULY SUGGESTIVE AND NOT OTHERWISE RELIABLE.
 {¶ 19} "III. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL PROVIDED BY THE SIXTH AMENDMENT OF THE UNITED STATES *Page 6 
CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION, AS WELL AS DUE PROCESS PROTECTION UNDER THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND IN ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION."
 I. {¶ 20} In the First Assignment of Error, appellant asserts the trial court erred in denying a continuance of the trial in order to allow defense counsel more time to prepare a defense particularly in light of appellant's offer to waive his speedy trial rights.
 {¶ 21} It is a basic due process right and indeed essential to a fair trial that a defense counsel be afforded the reasonable opportunity to prepare for trial. State v. Sowders (1983), 4 Ohio St.3d 143,447 N.E.2d 118.
 {¶ 22} "The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." Id. at 144, quotingUngar v. Sarafite (1964), 376 U.S. 575, at 589-590, 84 S.Ct. 841, at849-850, 11 L.Ed.2d 921 (citations omitted).
 {¶ 23} It is well-settled in Ohio that the grant or denial of a continuance is a matter within the sound discretion of the trial court.State v. Sowders (1983), 4 Ohio St.3d 143, 447 N.E.2d 118, State v.Unger (1981), 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 [21 O.O.3d 41];State v. Bayless (1976), 48 Ohio St.2d 73, 101, 357 N.E.2d 1035
[2 O.O.3d 249]. *Page 7 
 {¶ 24} Further, the Ohio Supreme Court has refrained from adopting a mechanical test to determine when a trial court has abused its discretion in granting or denying a motion for a continuance; instead, it has endorsed the use of a balancing test which takes cognizance of all competing considerations. Sowders, supra at 144.
 {¶ 25} In Unger, the Ohio Supreme Court stated that "[w]eighed against any potential prejudice to a defendant are concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice." Unger, supra at 67.
 {¶ 26} The Court then described objective factors by which a judge may assess the propriety of a motion for continuance, stating:
 {¶ 27} "[a] court should note, inter alia: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case." Id. at 67-68, 423 N.E.2d 1078 (citations omitted).
 {¶ 28} Appellant relies upon our ruling in State v. Allen (March 24, 1997), Stark App. No. 1996CA00044, in support of his argument that the trial court's denial of the continuance constituted an abuse of discretion. However, we find Allen to be distinguishable. InAllen, counsel was appointed on December 29, 1995, to represent the defendant on four counts of armed robbery. Trial was scheduled for January 10, *Page 8 
1996. Defense counsel received discovery from the State on three separate occasions prior to the trial date.
 {¶ 29} First, defense counsel received partial discovery on January 2, 1996, including statements made by one of the co-defendants and a witness list including thirteen names. The next day, the State filed a supplemental discovery response, which included the names of additional witnesses. On day of trial, the State gave defense counsel incriminating statements made by the defendant at the time of his arrest, and defendant's palm print evidence discovered in the vehicle used during the commission of the crime.
 {¶ 30} This Court held the trial court abused its discretion by failing to grant a continuance for several reasons; first, defense counsel received discovery in piecemeal fashion; second, he was afforded no opportunity to investigate the discovery received on the day of trial; and finally, defense counsel had only 12 days to prepare for trial, part of which included a holiday.
 {¶ 31} In the case sub judice, appellant had full discovery 15 days before trial. Appellant also had the opportunity to observe the victim's testimony at the suppression hearing. There were no surprise witnesses or evidence. Appellant's counsel had a total of 27 days to prepare the case for trial or plea negotiations. In light of the facts presented to the trial court, this Court cannot find the trial court abused its discretion in denying the continuance even though appellant was willing to waive speedy trial rights.
 {¶ 32} Accordingly, appellant's First Assignment of Error is overruled.
 II. *Page 9 {¶ 33} In the Second Assignment of Error, appellant argues that trial court should have suppressed the identification of appellant by Gibson and Perry.
 {¶ 34} "It is the likelihood of misidentification which violates a defendant's right to due process". State v. Parker (1990),53 Ohio St.3d 82, 87, 558 N.E.2d 1164.
 {¶ 35} "Suggestive confrontations are disproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for further reason that the increased chance of misidentification is gratuitous." Neil v. Biggers (1972), 409 U.S. 188,198, 93 S.Ct. 375, 34 L.Ed.2d 401.
 {¶ 36} The purpose of a strict rule barring evidence of unnecessarily suggestive confrontations "would not be based on the assumption that in every instance the admission of evidence of such a confrontation offends due process." Id. at 199 (citations omitted).
 {¶ 37} "The admission of testimony concerning a suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability."Manson v. Brathwaite (1977), 432 U.S. 98, 106, 97 S.Ct. 2243, 2249,53 L.Ed.2d 140. "[R]eliability is the linchpin in determining the admissibility" of such evidence. Id. at 114.
 {¶ 38} In State v. Brown (1988), 38 Ohio St.3d 305, 528 N.E.2d 523, the Ohio Supreme held:
 {¶ 39} "Where a witness has been confronted by a suspect before trial, that witness' identification of the suspect will be suppressed if the confrontation procedure was unnecessarily suggestive of the suspect's guilt and the identification was unreliable *Page 10 
under the totality of the circumstances." Id. at 310, 528 N.E.2d 523, citing Manson v. Brathwaite, supra.
 {¶ 40} The central question is whether under the totality of the circumstances the identification of appellant was reliable even though the confrontation procedure was suggestive. Neil v. Biggers,supra at 199.
 {¶ 41} The factors to be considered in evaluating the likelihood of misidentification include the following: the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. Id. at 199-200. See also, State v. Hill (March 8, 1999), Stark App. No. 1998CA0083.
 {¶ 42} In this case, Gibson testified at the suppression hearing that he viewed and focused on appellant's face for over a minute during the crime. T. of Suppression Hearing, at 6-7, 13.
 {¶ 43} Q: "Now, when the three of you were standing there, how far away is the guy that robbed you from you?"
 {¶ 44} Gibson: "Probably three to four feet."
 {¶ 45} Q: "And, when he is just three to four feet away from you, did you get a good look at him?"
 {¶ 46} A: "Yes, I did."
 {¶ 47} Q: "Were you able to describe him to the police when they got there?"
 {¶ 48} A: "Yes, I was."
 {¶ 49} Q: "And what did this guy look like? What was he wearing?" *Page 11 
 {¶ 50} A: "Well, I couldn't exactly tell you the colors, but all I know is he has a dark colored shirt on with some white in it. That's what I thought. Because I was so shook up I really didn't pay no attention to his clothes. I was more concerned about what he looked like in the face, so I could remember him."
 {¶ 51} Later in the same hearing, Gibson testified that he saw appellant in the cruiser approximately 30 minutes after the robbery.Id. at 8.
 {¶ 52} Q: "And did you have occasion to see him again?"
 {¶ 53} A: "Only one other time, that's when the police brought him around in the cruiser."
 {¶ 54} Q: "Okay. About how long after this incident when you saw him three or four feet from you did you see him again in the cruiser?"
 {¶ 55} A: "It couldn't have been no more than thirty minutes at the most, or less."
 {¶ 56} "And was he the only guy in the cruiser?"
 {¶ 57} "Yes, he was."
 {¶ 58} "And what did the officer say to you?"
 {¶ 59} "He asked me if this was the guy that took your cell phone and
 {¶ 60} "Was he?"
 {¶ 61} "Yes, he was."
 {¶ 62} "Did you have any trouble remembering him?"
 {¶ 63} "No, no, I did not."
 {¶ 64} "Did you immediately recognize him as the guy who did this?" *Page 12 
 {¶ 65} A: "Yes, I did, immediately."
 {¶ 66} A: "Did anybody say anything to you that would suggest that this should be the guy?"
 {¶ 67} Q: "No, no, no, they didn't."
 {¶ 68} A: "Did you hesitate at all in identifying him?"
 {¶ 69} A: "No, no."
 {¶ 70} Officer Foti also testified and confirmed that Gibson immediately and without hesitation identified appellant in the back of the cruiser. Id. at 23-24. Gibson also identified the wallet and cell phone as his. Id. at 24.
 {¶ 71} Officer Foti advised Gibson and Perry to follow him to the station. At the station, he gave Perry the opportunity to view appellant through a "book-in window". Id.
 {¶ 72} Q: "Now, while he [appellant] was down at the city jail, did Mr. Perry come on station?"
 {¶ 73} A: "* * * When we got to the entrance of what we call the inner jail, I gave Mr. Perry the opportunity to go into the inner jail and look through the book-in window and ask (sic) is this the person you tackled, and is this the person who robbed Mr. Gibson. He said, yes, it was."
 {¶ 74} Q: "Did he hesitate at all in his identification?"
 {¶ 75} A: "No, he did not."
 {¶ 76} Q: "Was there anyone else being booked in at the time, or was it just the suspect and some officers?"
 {¶ 77} A: "I believe it was just the suspect and some officers." *Page 13 
 {¶ 78} Q: "At any time did you make any indication to either Mr. Gibson or Mr. Perry that this, in fact, was the suspect?"
 {¶ 79} A. "No. I asked them if it was him."
 {¶ 80} Lastly, Officer Foti stated that Perry's identification took place less than 40 minutes after he was dispatched to the crime scene.Id. at 26.
 {¶ 81} In applying the factors set forth in Neil v. Biggers,supra, this Court finds the identification of appellant by Gibson and Perry to be reliable based on the totality of circumstances. The victim and witness gave an accurate description of the robber prior to the show-up. Gibson and Perry had ample opportunity to view the robber during the commission of the offense. Both identifications occurred approximately 30 to 40 minutes after the crime occurred. Gibson and Perry positively identified appellant as the robber with a high degree of certainty. We find the trial court did not err in denying appellant's motion to suppress the identifications by the victim and witness.
 {¶ 82} Accordingly, appellant's Second Assignment of Error is overruled.
 III. {¶ 83} In the Third Assignment of Error, appellant alleges ineffective assistance of counsel.
 {¶ 84} The standard of review of an ineffective assistance of counsel claim is well-established. Pursuant to Strickland v. Washington (1984),466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 673, in order to prevail on such a claim, the appellant must demonstrate both (1) deficient performance, and (2) resulting prejudice, i.e., errors on the part of counsel of a nature so serious that there exists a reasonable probability *Page 14 
that, in the absence of those errors, the result of the trial court would have been different. State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373.
 {¶ 85} First, we must determine whether counsel's assistance was ineffective; i.e., whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his or her essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. As stated above, this requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. Id. Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. State v. Sallie (1998), 81 Ohio St.3d 673, 675,693 N.E.2d 267.
 {¶ 86} The failure to file a motion to suppress is not per se ineffective assistance of counsel. State v. Madrigal, 87 Ohio St.3d 378,389, 721 N.E.2d 52, 2000-Ohio-448, certiorari denied (2000),531 U.S. 838, 121 S.Ct. 99, 148 L.Ed.2d 58, quoting Kimmelman v. Morrison (1986),477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed.2d 305. Failure to file a motion to suppress constitutes ineffective assistance of counsel only if, based on the record, the motion would have been granted. State v.Robinson (1996), 108 Ohio App.3d 428, 433, 670 N.E.2d 1077.
 {¶ 87} Appellant claims his trial counsel was ineffective for failing to object or filing a motion to suppress in regards to appellant's use of a false name to the police officers when the appellant was discovered on the porch. Appellant argues the statements he made to the police regarding his identity should have been suppressed *Page 15 
because appellant was not properly issued Miranda warnings prior to being questioned by the police.
 {¶ 88} Miranda does not apply unless there is a custodial interrogation. State v. Wiles (1991), 59 Ohio St.3d 71, 83,571 N.E.2d 97, 114.
 {¶ 89} "[T]he special procedural safeguards outlined inMiranda are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation. `Interrogation,' as conceptualized in the Miranda opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself." Rhode Island v. Innis (1980), 446 U.S. 291, 300,100 S.Ct. 1682, 1689, 64 L.Ed.2d 297.
 {¶ 90} "Interrogation" is defined to include "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. Id. at 301. See also,State v. Phillips (1991), 75 Ohio App.3d 785, 788, 600 N.E.2d 825.
 {¶ 91} There is no question appellant was in custody while on the porch. The question is whether the statements were due to interrogation. Officer Gillis testified that he asked appellant his name after he was handcuffed. T. of Trial at 203. Appellant gave the name Andre Hughes, which Officer Gillis knew to be false. Id. Officer Gillis knew appellant to be Donald Cheatam. Id. The officer confronted appellant and he admitted his identity.
 {¶ 92} Appellant's response was regarding his identity, not the elements of the crime of robbery. This question of identity is not violative of Miranda. They were not statements likely to elicit an incriminating response. Rhode Island v. Innis, supra. Accordingly, appellant was not entitled to Miranda warnings at the time he made the *Page 16 
statements. Appellant was not denied effective assistance of counsel because the motion to suppress these statements would not have been successful.
 {¶ 93} Next, appellant contends that his counsel was ineffective when he failed to object to the testimony that he had counterfeit crack cocaine on his person at the time of arrest. Specifically, he claims that Officer Gillis' affirmation during questioning, that in his experience, people carrying counterfeit crack cocaine are looking to rip off crack heads was in violation of Evid.R. 404(B). T. of Trial at 205.
 {¶ 94} The failure to object is not a per se indicator of ineffective assistance of counsel because counsel may refuse to object for tactical reasons. State v. Gumm (1995), 73 Ohio St.3d 413, 428, 653 N.E.2d 253. There are numerous ways to provide effective assistance of counsel, and debatable trial tactics and strategies do not constitute a denial of that assistance. State v. Clayton (1980), 62 Ohio St.2d 45, 49,402 N.E.2d 1189.
 {¶ 95} Appellant's defense counsel may have failed to object for tactical reasons. Notably, defense counsel remarked in the opening statement to the jury: "[t]he evidence is going to show that when Mr. Cheatam was arrested, in his possession was a counterfeit controlled substance originally thought to be crack cocaine." T. of Trial, at 105. Apparently, defense counsel believed this evidence would be admissible and perhaps favorable to appellant. However, even if defense counsel thought the testimony was improper, he may have chosen not to object so further attention would not be drawn to the issue.
 {¶ 96} Even assuming defense counsel was ineffective for failing to object to Officer Gillis' testimony regarding the appellant's possession of counterfeit crack *Page 17 
cocaine, it did not prejudice the outcome of the appellant's trial. Officer Gillis' statements constitute a small portion of the testimony presented in appellant's trial. Based upon the weight of the evidence against the appellant, there is not a reasonable possibility that the challenged testimony contributed to the appellant's conviction.
 {¶ 97} Accordingly, appellant's Third Assignment of Error is overruled.
 {¶ 98} For the foregoing reasons, the judgment of the Richland County Court of Common Pleas is hereby affirmed.
J. Gwin, P.J. and Edwards, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Richland County Court of Common Pleas is affirmed. Costs assessed to appellant. *Page 1