JOURNAL ENTRY and OPINION
{¶ 1} Following a bench trial, the court found defendant Marcus Campbell guilty of one count of felonious assault and two counts of domestic violence. In this appeal, Campbell argues that the court did not strictly comply with the statutory requirements for waiving a trial by jury and that the judgment of conviction is against the manifest weight of the evidence.
 I {¶ 2} Prior to trial, Campbell signed a form in which he waived his right to a jury trial. He now argues that the court failed to comply with R.C. 2945.05 because it did not make sufficient inquiry into his intent to waive his right to a jury trial and that it did not journalize his waiver of a jury trial prior to trial.
 A {¶ 3} R.C. 2945.05 states in relevant part:
 {¶ 4} "In all criminal cases pending in courts of record in this state, the defendant may waive a trial by jury and be tried by the court without a jury. Such waiver by a defendant, shall be in writing, signed by the defendant, and filed in said cause and made a part of the record thereof. * * * Such waiver of trial by jury must be made in open court after the defendant has been arraigned and has had opportunity to consult with counsel. Such waiver may be withdrawn by the defendant at any time before the commencement of the trial."
 {¶ 5} The statute has no requirement that the court interrogate the accused to determine whether the waiver of the right to a trial by jury is knowing and intelligent. In fact, "[t]he Criminal Rules and the Revised Code are satisfied by a written waiver, signed by the defendant, filed with the court, and made in open court, after arraignment and opportunity to consult with counsel." See State v. Jells (1990),53 Ohio St.3d 22, 26 (citation omitted).
 {¶ 6} There are some cases from this court which broadly state that R.C. 2945.05 requires "* * * that the trial court engage in a colloquy with the defendant extensive enough for the trial judge to make a reasonable determination that the defendant has been advised and is aware of the implications of voluntarily relinquishing a constitutional right." See State v. Ford,
Cuyahoga App. Nos. 79441 and 79442, 2002-Ohio-1100, at 7, citingState v. Walker (1993), 90 Ohio App.3d 352, 358; State v.Huber, Cuyahoga App. No. 80616, 2002-Ohio-5839. It must be noted that R.C. 2945.05 does not mention any kind of "colloquy." Moreover, the Ohio Supreme Court's statements in Jells as to what R.C. 2945.05 requires would not permit the conclusion that a colloquy between the court and the accused should be read into the statute. In certain cases, for example a guilty plea under Crim.R. 11(C), the court is required to address the defendant "personally." That requirement is not present in R.C. 2945.05 and rules of statutory construction do not permit us to read it into the statute.
 {¶ 7} R.C. 2945.05 requires the defendant to sign a form that states in substance:
 {¶ 8} "`I ____, defendant in the above cause, hereby voluntarily waive and relinquish my right to a trial by jury, and elect to be tried by a Judge of the Court in which the said cause may be pending. I fully understand that under the laws of this state, I have a constitutional right to a trial by jury."
 {¶ 9} We acknowledge that the courts will not imply a waiver of a constitutional right and, in fact, indulge every reasonable presumption against waiver. Johnson v. Zerbst (1938),304 U.S. 458, 464. Nevertheless, by signing a jury waiver form that substantially conforms to that set forth in R.C. 2945.05, a defendant attests to the desire to waive a jury. Once presented with a signed jury waiver, the court need only satisfy itself that the defendant executed the form knowing what the form entailed. No further "colloquy" is necessary as it would merely restate that which the defendant acknowledged in writing. Of course, if the defendant signs the jury waiver form in the court's presence, it becomes unnecessary to confirm the authenticity of the defendant's signature, and the court may proceed to file the jury waiver with the clerk of the court.
 {¶ 10} The record shows that Campbell signed a jury waiver form that substantially complied with R.C. 2945.05, and that he signed it in the presence of the court. Because he signed it in the presence of the court, there was no need to inquire into the authenticity of the signature.
 B {¶ 11} Campbell incorrectly argues that the court failed to journalize the jury waiver prior to trial. The court filed the executed jury trial waiver with the clerk of the court on August 18, 2003, and trial commenced on August 19, 2003. Campbell appears to believe that the court's August 26, 2003 journal entry memorializing Campbell's jury waiver is the controlling document, but it is not. R.C. 2945.05 states that the "waiver" must be filed and made a part of the record. The "waiver" is the document Campbell signed and that was filed with the clerk of the court on August 18, 2003; the court's subsequent August 26, 2003 journal entry memorializing that waiver is not relevant here.
 {¶ 12} In any event, we have stated that "[s]trict compliance with R.C. 2945.05 is met upon filing the jury waiver; there is no rule pertaining to when the filing must occur." State v.Thomas, Cuyahoga App. No. 82130, 2003-Ohio-6157. See, also,State v. Dixon, Cuyahoga App. No. 82951, 2004-Ohio-2406. Since the court did file the waiver with the clerk of the court, it fully complied with R.C. 2945.05.
 II {¶ 13} Campbell's argument relating to the weight of the evidence concerns the extent of physical injuries suffered by his victims. He maintains that they were so de minimis that they could not have been caused by him.
 {¶ 14} When reviewing a claim that a judgment of conviction rendered by the court is against the manifest weight of the evidence, we determine whether the court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. State v. Thompkins,78 Ohio St.3d 380, 1997-Ohio-52. As the trier of fact, the court is entitled to the same deference given to juries, hence we acknowledge that the court is in the best position to assess the credibility of the witnesses. State v. DeHass (1967),10 Ohio St.2d 230. Our decision to grant a new trial based on the weight of the evidence is "exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Statev. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 15} The charges were based on injuries that Campbell's girlfriend and her daughter suffered in what even Campbell counsel described in opening statement as a "melee." The mother testified that Campbell came home in an agitated state. Earlier that evening, Campbell and the girlfriend spoke on the telephone, and Campbell told the girlfriend not to call him back at that number. Paying no heed to Campbell's request, the girlfriend called the number again, only to have another woman answer the telephone and start to curse her for calling. Consequently, when Campbell entered the house, the two began arguing, with the girlfriend saying that she had caught Campbell cheating with another woman. As tempers escalated, Campbell punched his girlfriend in the mouth and then tried to grab her. The girlfriend's daughter witnessed the punch. When Campbell tried to grab the girlfriend, the daughter grabbed his shoulder and tried to pull him back. Campbell turned on the daughter and said, "Oh, you want to fight?" He then struck the daughter in the temple with his fist. The punch cut the skin near the daughter's eye. The daughter held her ground and defended herself — her determination surprising her mother who never supposed that a thirteen-year-old would "fist-fight" with a thirty-four-year-old male. The girlfriend jumped into the fracas and both victims were hit several more times until Campbell saw that both women were bleeding and stopped. The daughter then called the police, only to have Campbell take the telephone away from her midway through the call. A tape of the telephone call confirmed the daughter's testimony to the extent that the police were called during the fight. The tape recording shows a great deal of background commotion and that the telephone call to the police had been cut off. The girlfriend later called the police. Campbell, hearing this second telephone call, left the premises.
 {¶ 16} Both women suffered injuries in the fight. The daughter received sutures to close a cut on her temple. Photographs of the girlfriend taken several days after the assault showed a cut inside her lip.
 {¶ 17} Campbell testified and agreed that he and the girlfriend had been arguing when he came home. He claimed that the daughter came out of her room carrying a 12-inch knife. He asked her what she was going to do with the knife and then grabbed it from her. A struggle ensued with both women "beating me" and he tried to leave. As he neared the doorway, he said the daughter jumped on his back and began scratching his neck. He knocked her off his back and the daughter fell hard against the floor. He then fled.
 {¶ 18} There is no doubt that both women suffered physical harm as a result of Campbell's actions. It may be that the daughter did not receive 13 stitches (the medical records admitted into evidence only state that she received "sutures"), but the exact number of stitches is unimportant in light of the record of treatment received and photographs showing an injury consistent with that treatment. Likewise, the girlfriend showed an injury to her mouth that was consistent with her testimony about having been punched.
 {¶ 19} We see no merit in Campbell's argument that these injuries were not caused by him, but by outside agencies as a consequence of him defending himself by pushing the women aside. To support this argument, Campbell suggests that the size and shape of the cut suffered by the daughter was inconsistent with being punched, and more consistent with having struck the sharp edge of some object. Campbell did not offer any expert opinion on the shape of the cut, and left it to the court to make a determination based on photographs taken several days after the incident. The court could rely on the medical records which consistently stated that the daughter sustained the cut as a result of having been struck by Campbell. And as the court noted, Campbell's own testimony showed that he and the women were "going at each other's throats," so a version of events making him the victim does not appear to be plausible. Moreover, the characterization of Campbell as a victim was so incredible that, taken in conjunction with his admission that he had been drinking before he returned to the house, the court could reasonably conclude that Campbell did testify truthfully about his actions during the fight. To buttress this point, it is worth noting that Campbell had no way to rebut the evidence that he cut off the first telephone call to the police. Hence the court did not lose its way by accepting the state's evidence as true and concluding that Campbell committed the crimes as charged.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kilbane, J., and Sweeney, J., Concur.