OPINION *Page 2 
{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Defendant-Appellant, Frank Lee Lavelle, appeals the decision of the Stark County Court of Common Pleas that found Lavelle guilty of felonious assault and kidnapping and sentenced him to maximum, consecutive sentences. On appeal, Lavelle argues that he did not properly waive his right to a jury trial; that the trial court prevented him from testifying in his own behalf; that the prosecutor committed misconduct during closing argument; that his defense counsel was ineffective; that his convictions are against the manifest weight of the evidence and not supported by sufficient evidence; and, that the trial court erred when sentencing him. However, none of Lavelle's arguments have any merit. Therefore, the trial court's decision is affirmed.
 Facts {¶ 2} Lavelle, a fifty-eight year old man, was living with his mother, Dolores Macioce, in Canton, Ohio. Lavelle suffers from Parkinson's disease and takes medication to control his disease. On September 22, 2006, Lavelle was soldering in his room when a trash can caught fire. Macioce took the trash can to the bathroom to put out the fire. She and Lavelle then cleaned up the mess. Macioce then went to her room to get ready for bed. Lavelle followed her and began beating her severely. She tried to run away, but he would not let her out of the house. Macioce eventually made it outside, but Lavelle chased her and continued to severely assault her. Eventually, he brought her back inside the home, left her lying on a mattress near the front door, and left. Macioce was too weak from the beating to make it to a phone.
 {¶ 3} When Lavelle returned the next morning, he found Macioce lying in the same position. He spoke to her some, stating that he was surprised she was still alive, but again left. Macioce made it to a phone and called a friend, who called 911. Lavelle returned after the phone call and the police arrived soon thereafter. They then arrested Lavelle.
 {¶ 4} Lavelle was indicted on November 6, 2006, by the Stark County Grand Jury and charged with attempted murder, kidnapping, and felonious assault. Lavelle pleaded *Page 3 
not guilty by reason of insanity and a psychiatrist examined him. The psychiatrist found both that Lavelle was competent to stand trial and that Lavelle "was not suffering from a severe mental disease or defect at the time of the alleged offense" and that he "did know the wrongfulness of the alleged offenses at the time of the acts charged." Lavelle's counsel withdrew the insanity plea before trial. In addition, Lavelle waived his right to a jury trial before trial.
 {¶ 5} At trial, Lavelle did not testify in his own defense, but was allowed to make a statement to the trial court during closing arguments. The trial court then acquitted Lavelle on the charge of attempted murder, but found him guilty of kidnapping and felonious assault. It then sentenced Lavelle to maximum, consecutive sentences for those two offenses.
 {¶ 6} Lavelle raises six assignments of error in this appeal and we will address those assignments of error in a different order than in which they are presented.
 Waiver of the Right to a Jury Trial {¶ 7} In his fifth assignment of error, Lavelle argues:
 {¶ 8} "The trial court erred when it failed to conduct a proper colloquy at Appellant's waiver of his right to a jury trial."
 {¶ 9} Lavelle contends that the trial court never informed him that he could participate in the selection of the jury and, therefore, his waiver of his right to a jury trial was not knowing, intelligent, and voluntary. However, the State correctly argues that there is no requirement that the trial court engage in a colloquy with the defendant to ensure that such a waiver is knowing, intelligent, and voluntary before accepting a defendant's waiver of his right to a jury trial.
 {¶ 10} R.C. 2945.05 governs jury waivers and provides:
 {¶ 11} "In all criminal cases pending in courts of record in this state, the defendant may waive a trial by jury and be tried by the court without a jury. Such waiver by a defendant, shall be in writing, signed by the defendant, and filed in said cause and made a part of the record thereof. It shall be entitled in the court and cause, and in substance as follows: `I_______, defendant in the above cause, hereby voluntarily waive and relinquish my right to a trial by jury, and elect to be tried by a Judge of the Court in which *Page 4 
the said cause may be pending. I fully understand that under the laws of this state, I have a constitutional right to a trial by jury.'
 {¶ 12} "Such waiver of trial by jury must be made in open court after the defendant has been arraigned and has had opportunity to consult with counsel. Such waiver may be withdrawn by the defendant at any time before the commencement of the trial."
 {¶ 13} Nothing in R.C. 2945.05 requires that a trial court engage in a colloquy with the defendant before accepting his waiver of a jury.State v. Campbell, 8th Dist. No. 83489, 2004-Ohio-4090, at ¶ 3-10. The Ohio Supreme Court recognized this in State v. Spivey,81 Ohio St.3d 405, 1998-Ohio-0437. In that case, the defendant waived his right to a jury trial in accordance with R.C. 2945.05. The trial court then questioned the defendant in open court, with counsel present, concerning the waiver.
 {¶ 14} The defendant argued on appeal that the trial court should have conducted "a more thorough inquiry into whether appellant knowingly, intelligently, and voluntarily waived his right to a jury trial." Id. at 408-409. The Ohio Supreme Court rejected this argument, noting that the waiver complied with R.C. 2945.05. Id. at 409. However, the court went on to highlight the fact that the trial court questioned the defendant about the waiver "even though no such questioning was required." Id. When reaching this conclusion, the trial court was merely applying its prior holding in State v. Jells (1990), 53 Ohio St.3d 22, 25-26, where it held:
 {¶ 15} ""There is no requirement in Ohio for the trial court to interrogate a defendant in order to determine whether he or she is fully apprised of the right to a jury trial. The Criminal Rules and the Revised Code are satisfied by a written waiver, signed by the defendant, filed with the court, and made in open court, after arraignment and opportunity to consult with counsel. While it may be better practice for the trial judge to enumerate all the possible implications of a waiver of a jury, there is no error in failing to do so. Since the executed waiver in this case complied with all of the requirements of R.C. 2945.05, and counsel was present at the signing of the waiver, we find no error." (Footnote omitted) (Citation omitted). Id.
 {¶ 16} In this case, the waiver that Lavelle signed on March 19, 2007, fully complied with R.C. 2945.05. The trial court then questioned Lavelle in open court with *Page 5 
counsel present. The court ensured that the signature on the waiver was Lavelle's signature, that he had consulted with his attorney before executing the waiver, and that he understood the significance of waiving his right to a jury trial. The trial court did more than enough to ensure that Lavelle had properly waived his right to a jury trial. Accordingly, Lavelle's fifth assignment of error is without merit.
 Right to Testify {¶ 17} In his second assignment of error, Lavelle argues:
 {¶ 18} "The trial court abused its discretion by denying the Appellant his right to testify."
 {¶ 19} In his opening statement, Lavelle's counsel stated that Lavelle would testify on his own behalf. After the State rested, Lavelle's attorney said that Lavelle, "may or may not testify. I would like to spend a few minutes talking to him about that." The trial court decided to recess for the day, so Lavelle could make this decision overnight.
 {¶ 20} The next morning, court reconvened. Lavelle's counsel asked to approach the bench and told the court that the discussion did not need to be on the record. After that sidebar, the trial court told Lavelle and his counsel the following:
 {¶ 21} "Just so you and your client understands [sic], Mike, and your client understands that any statement he makes will not be evidence, inasmuch as the Prosecutor will not be able to cross-examine him. So the evidence would be in.
 {¶ 22} "He can say what he wants to say, but it is, you know, it is basically a statement that he is making, but it is not evidence the Court will consider as it relates to the elements that have been charged."
 {¶ 23} Lavelle's attorney showed he understood this and conferred with his client. After conferring with Lavelle, Lavelle's attorney rested without presenting any evidence. The attorneys then gave closing arguments. When Lavelle's attorney finished his closing argument, Lavelle made a statement to the court.
 {¶ 24} Lavelle contends that the trial court's statements when the trial reconvened demonstrate that the trial court improperly prevented Lavelle from testifying in his own defense. The State argues that Lavelle decided not to testify of his own accord and that the trial court's statements merely recognized that decision. *Page 6 
 {¶ 25} The trial court's statements clearly show that it was allowing Lavelle to make a statement to the court in an unconventional manner. However, it does not unambiguously demonstrate that the trial court was preventing Lavelle from making a statement in a more conventional manner by testifying on his own behalf. The only way for this court to say for sure whether the trial court was acting improperly would be to review what was said at the sidebar which occurred immediately prior to the judge's statement. However, Lavelle's own counsel told the trial court that it was unnecessary to record that sidebar. We cannot presume that the trial court acted improperly, since the unrecorded sidebar could easily have revealed that the trial court was just reciting its understanding of what Lavelle intended to do. State v. Phillips,74 Ohio St.3d 72, 92, 1995-Ohio-0171. Since Lavelle is unable to show that the trial court acted improperly, his second assignment of error is without merit.
 Prosecutorial Misconduct {¶ 26} In his fourth assignment of error, Lavelle argues:
 {¶ 27} "The Appellant was deprived of due process of [sic] by the misconduct of the prosecutor."
 {¶ 28} Lavelle contends that this statement by the prosecutor improperly vouched for the witness's credibility. The State argues that this court must review this assignment of error for plain error and that the prosecutor's statements were not plainly erroneous.
 {¶ 29} During closing argument, the prosecutor said the following:
 {¶ 30} "Your Honor had the opportunity to listen to Dolores Macioce yesterday, a 76 year old mother of the Defendant, a credible witness and victim in this case who described what had happened."
 {¶ 31} A prosecutor is encouraged to prosecute with earnestness and vigor. State v. Smith (1984), 14 Ohio St.3d 13, 14, citing Berger v.United States (1935), 295 U.S. 78, 88. Therefore, appellate courts should give prosecutors "a certain degree of latitude in summation. The prosecutor may draw reasonable inferences from the evidence presented at trial, and may comment on those inferences during closing argument. We view the state's closing argument in its entirety to determine whether the allegedly improper remarks were prejudicial." (Citations omitted)State v. Treesh, *Page 7 90 Ohio St.3d 460, 466, 2001-Ohio-0004. Nevertheless, a prosecutor cannot express her personal belief or opinion as to the credibility of a witness or as to the guilt of the accused. Smith at 13-14.
 {¶ 32} In order for the prosecutor to "vouch" for the witness, the prosecutor's statements must imply knowledge of facts outside the record or place the prosecutor's personal credibility in issue. State v.Keene (1998), 81 Ohio St.3d 646, 666, 1998-Ohio-0342. Therefore, a prosecutor may argue that certain evidence tends to make a witness more or less credible, but may not state his own belief as to whether a witness is telling the truth. State v. Carpenter (1996),116 Ohio App.3d 615, 624.
 {¶ 33} Lavelle did not object to the prosecutor's comment in the trial court, so he has waived all but plain error. See Crim R. 52(B);State v. Slagle (1992), 65 Ohio St.3d 597, 604. This court may invoke the plain error rule only if it finds 1) that the prosecutor's comments denied appellant a fair trial, 2) that the circumstances in the instant case are exceptional, and 3) that reversal of the judgment below is necessary to prevent a miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. Appellate courts must be very cautious when taking notice of plain error. Id.
 {¶ 34} Viewed in its entire context, the prosecutor's comments were not plainly erroneous. The prosecutor's statements did not imply knowledge outside the record and did not place her personal credibility at issue. Instead, the prosecutor's comments were merely a prelude to the lengthy recitation of the facts she believed supported the witness's credibility. While the prosecutor's comments may have been ill-advised and could, in another context, be prejudicial, they did not amount to plain error in this case.
 {¶ 35} Finally, we note that this case involved a bench trial and judges are presumed in a bench trial to rely only upon relevant, material, and competent evidence. State v. Fox (1994),69 Ohio St.3d 183, 189.
 {¶ 36} For all of these reasons, Lavelle's fourth assignment of error is also without merit.
 Ineffective Assistance of Counsel {¶ 37} In his third assignment of error, Lavelle argues:
 {¶ 38} "The Appellant was denied his right to due process because his trial counsel *Page 8 
provided ineffective assistance."
 {¶ 39} Lavelle contends that his counsel was ineffective in three ways: 1) by advising Lavelle to waive his right to a jury trial, 2) by advising Lavelle to withdraw his plea of not guilty by reason of insanity, and 3) by not moving to suppress Lavelle's statements to police.
 {¶ 40} To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate counsel's performance was deficient and that deficient performance prejudiced the defense. Strickland v.Washington (1984), 466 U.S. 668, 687. A properly licensed attorney is presumed to execute his duties in an ethical and competent manner.State v. Smith (1985), 17 Ohio St.3d 98, 100. When reviewing whether counsel's performance was ineffective, courts must refrain from second-guessing strategic decisions of trial counsel. State v.Sallie, 81 Ohio St.3d 673, 674, 1998-Ohio-0343. Ineffectiveness is demonstrated by showing counsel's errors were so serious that he or she failed to function as the counsel guaranteed by the Sixth Amendment.State v. Hamblin (1988), 37 Ohio St.3d 153, 156. To establish prejudice, a defendant must show there is a reasonable possibility that, but for counsel's errors, the result of the proceeding would have been different. Strickland at 694. A reasonable probability must be a probability sufficient to undermine confidence in the outcome of the case. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus. The defendant bears the burden of proof in demonstrating ineffective assistance of counsel. Smith at 100.
 {¶ 41} Lavelle first contends that his counsel was ineffective for advising him to waive his right to a jury trial. In support of this argument, Lavelle "avers" in his appellate brief that he did this at counsel's insistence, did not understand the ramifications of this decision, and that counsel's advice was against Lavelle's better judgment. None of these facts are reflected in the record. Instead, the trial court's questions to Lavelle before trial showed that Lavelle understood the ramifications of waiving his right to a jury trial, that the decision was his own, and that he had consulted with counsel before making that decision. There is nothing in the record indicating counsel's advice regarding whether Lavelle should waive his right to a jury trial. Accordingly, we cannot conclude that counsel was ineffective in the manner argued by Lavelle. See State v. Turnbow, 5th Dist. *Page 9 
No. 2005CA00026, 2005-Ohio-6702, at ¶ 30.
 {¶ 42} Lavelle next argues that counsel was ineffective for withdrawing Lavelle's plea of not guilty by reason of insanity prior to trial. "A person is `not guilty by reason of insanity' relative to a charge of an offense only if the person proves, in the manner specified in section 2901.05 of the Revised Code, that at the time of the commission of the offense, the person did not know, as a result of a severe mental disease or defect, the wrongfulness of the person's acts." R.C. 2901.01(A)(14). Under R.C. 2901.05(A), Lavelle bore the burden of proving that he was not guilty by reason of insanity by a preponderance of the evidence. State v. Filiaggi, 86 Ohio St.3d 230, 242, 1999-Ohio-0099.
 {¶ 43} Lavelle's argument about counsel's ineffectiveness ignores the fact that he bore the burden of proof on this issue. The psychiatrist who examined Lavelle concluded that Lavelle "was not suffering from a severe mental disease or defect at the time of the alleged offense" and that he "did know the wrongfulness of the alleged offenses at the time of the acts charged." Thus, there was no evidence which Lavelle could have advanced to prove that he was not guilty by reason of insanity.
 {¶ 44} Lavelle compares his case to State v. Brown (1992),84 Ohio App. 414, but that case is distinguishable. In that case, the defense never entered a plea of not guilty by reason of insanity despite the fact that the defendant "had no recollection of life for a period of several days, and no recollection of the crimes of which he was accused. His last memory is of speaking to his mother whom he believes is buried at a service station in Lakewood. He recalls the need to find a shovel so he can properly bury her at a cemetery in North Royalton. Appellant then `woke up' in the psychiatric unit of the Cuyahoga County Jail." Id. at 421-422. The court found that "no trial tactic or strategy" justified defense counsel's failure to enter a plea of not guilty by reason of insanity on behalf of his client and reversed the defendant's conviction. Id. at 422.
 {¶ 45} This case is different than Brown because the evidence of criminal insanity is not as pronounced as in that case. In this case, it appears that Lavelle may have been acting under a delusion of some kind, but it appears that this delusion made him think he was acting under some sort of duress and did not keep him from knowing the *Page 10 
wrongfulness of his acts. Lavelle's later claim that he did not commit the acts his mother claimed he committed further shows that Lavelle understands the wrongful nature of his acts. Thus, counsel's performance was not deficient when he withdrew Lavelle's plea of not guilty by reason of insanity.
 {¶ 46} Finally, Lavelle contends that his counsel was ineffective for not moving to suppress the statements he made to the police. Lavelle claims that he could not have knowingly, intelligently, and voluntarily waived his right against self-incrimination since he was mentally ill and delusional at the time of the statements.
 {¶ 47} Trial counsel's failure to file a suppression motion does not per se constitute ineffective assistance of counsel. State v.Madrigal, 87 Ohio St.3d 378, 389, 2000-Ohio-0448. Counsel can only be found ineffective for failing to file a motion to suppress if, based on the record, the motion would have been granted. State v. Cheatam, 5th Dist. No. 06-CA-88, 2007-Ohio-3009, at ¶ 86.
 {¶ 48} Although Lavelle argues that his mental illness and delusions prevent him from being able to waive his right to remain silent, he has not backed this claim up with any argument or case law. Case law shows that a mental illness could preclude or interfere with a subject's knowledge of his rights and understanding of the consequences of waiving them. See State v. Salvatore, 10th Dist. No. 02Ap-573, 2003-Ohio-0957. However, Lavelle would have to demonstrate that he had a mental illness which could preclude or interfere with his ability to know and understand those rights. Id. Based on the record before this court, it does not appear that he would have met this burden, since a psychiatrist found him both sane and competent to stand trial. Accordingly, trial counsel was not ineffective for failing to move to suppress those statements.
 {¶ 49} For these reasons, all of the arguments in Lavelle's third assignment of error are without merit.
 Manifest Weight Sufficiency of the Evidence {¶ 50} In his first assignment of error, Lavelle argues:
 {¶ 51} "The trial court's finding of guilt is against the manifest weight and sufficiency of the evidence."
 {¶ 52} As the Ohio Supreme Court has stated, arguments concerning the *Page 11 
"sufficiency of the evidence" should not be confused with those addressing the "manifest weight of the evidence". See State v.Thompkins (1997), 78 Ohio St.3d 380, 1997-Ohio-0052, paragraph two of the syllabus ("The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different."). "Sufficiency of the evidence" is "`a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" Id. at 386, quoting Black's Law Dictionary (6 Ed. 1990) 1433. The relevant inquiry when determining whether the evidence is sufficient to support the verdict "is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of facts." Id. at 273. Whether the evidence is legally sufficient is a question of law.Thompkins at 386.
 {¶ 53} In contrast, when reviewing whether a conviction was against the manifest weight of the evidence, we must "examine whether the evidence produced at trial `attains the high degree of probative force and certainty required of a criminal conviction.'" State v.Tibbetts (2001), 92 Ohio St.3d 146, 163, 2001-Ohio-0132, quotingState v. Getsy (1998), 84 Ohio St.3d 180, 193, 1998-Ohio-0533. In order to do this, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the fact-finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id. "`Weight is not a question of mathematics, but depends on its effect in inducing belief.'" (Emphasis omitted)Thompkins at 387, quoting Black's Law Dictionary (6 Ed. 1990) 1594.
 {¶ 54} In this case, Lavelle was found guilty of two offenses: felonious assault in violation of R.C. 2903.11(A)(2) and kidnapping in violation of R.C. 2905.01(A)(3). R.C. 2903.11(A)(2) defines felonious assault as knowingly causing or attempting to cause "physical harm to another * * * by means of a deadly weapon or dangerous ordnance." *Page 12 
"Physical harm" is "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). A "deadly weapon" is "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2923.11(A).
 {¶ 55} R.C. 2905.01(A)(3) defines kidnapping as follows:
 {¶ 56} "No person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person * * * [t]o terrorize, or to inflict serious physical harm on the victim or another."
 {¶ 57} "Serious physical harm" is defined as any of the following:
 {¶ 58} "(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
 {¶ 59} "(b) Any physical harm that carries a substantial risk of death;
 {¶ 60} "(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 {¶ 61} "(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
 {¶ 62} "(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain." R.C. 2901.01(A)(5).
 {¶ 63} The first witness was Macioce, the victim and Lavelle's 76 year-old mother. Lavelle moved into Macioce's condo to live with her in the summer of 2006. Lavelle suffered from Parkinson's disease and took medication to control the disease.
 {¶ 64} On September 22, 2006, Macioce was getting ready for bed when she smelled smoke in Lavelle's bedroom. He told her that he was soldering in his room and she told him he should do that in the garage. She then saw flames in a wastebasket because Lavelle had not turned the soldering iron off, grabbed the wastebasket, and took it into the bathroom to put the fire out in the tub. Lavelle helped Macioce clean up the mess and then began to pace back and forth. Macioce headed to her bedroom, Lavelle followed her, and he began beating her, saying "That's for Carl." Carl is another of Macioce's sons and had committed suicide. Macioce ran to the kitchen to get away from *Page 13 
Lavelle. She then ran to the front door, but Lavelle would not let her go. Lavelle then knocked Macioce over a coffee table. Macioce was then able to get outside and call for help.
 {¶ 65} Unfortunately, Macioce's calls for help went unheeded and Lavelle chased her to the patio of a neighbor's condo. Lavelle kicked Macioce so hard that he broke her ribs and pounded her face into the floor of the patio, breaking Macioce's eye socket and cheekbones. Lavelle then grabbed a pipe and repeatedly beat Macioce so badly that the skin was torn from her arms. Lavelle then tried choking Macioce with the pipe.
 {¶ 66} After beating Macioce, Lavelle told her that he would count to five and wanted her to get up. When Macioce could not do this, Lavelle beat her with the pipe again. This repeated itself until Lavelle finally picked Macioce up and put her in a chair. He then dragged the chair back to Macioce's condo. Macioce was so weak from the beating that she could not resist Lavelle. When they reached the condo, Lavelle pulled a mattress near the front door and allowed Macioce to fall into the mattress. Lavelle then left and was gone until the next morning. Macioce did not have the strength to get up and get to a telephone to call for help.
 {¶ 67} The next morning, Lavelle returned and said, "Well, I see you are not dead yet." Lavelle then leaned over Macioce and had her say "the sinner's prayer." Macioce did not know what Lavelle was talking about, but repeated after him. Lavelle told Macioce that he "should have brought the stick back or the pipe back." Lavelle then left the house again and Macioce was able to get to the phone. Her 911 call did not go through, but she was able to contact a friend who called 911 for her. Lavelle then returned, followed shortly by the police. Macioce was taken to a trauma center and had multiple operations and skin grafts as a result of her injuries.
 {¶ 68} Macioce's friend testified and confirmed that Macioce called her and that she called the police. She saw Macioce at the hospital and testified that Macioce looked horribly beaten.
 {¶ 69} The officer who was first on the scene testified that he saw Macioce just inside the door with multiple injuries and Lavelle just behind her. Macioce said that Lavelle had injured her and Lavelle denied this, saying that he had found her outside *Page 14 
already injured and brought her inside. The officer then arrested Lavelle, who then said that his brother Anthony caused the injuries. Lavelle was cooperative during the arrest.
 {¶ 70} The State then introduced forensic and other testimony which supported Macioce's version of events. Lavelle did not introduce any testimony in his own defense.
 {¶ 71} This evidence supports each of Lavelle's convictions. There is more than enough evidence in the record to support the trial court's conclusion that Lavelle knowingly caused physical harm to Macioce. Likewise, the evidence supports a conclusion that Lavelle restrained Macioce's liberty so he could cause serious physical harm to her. Thus, Lavelle's arguments regarding the weight and sufficiency of the evidence supporting his convictions are without merit.
 Sentencing {¶ 72} In his sixth assignment of error, Lavelle argues:
 {¶ 73} "The trial court erred by imposing maximum, consecutive sentences when the offenses did not result from a separate animus."
 {¶ 74} Lavelle contends that the trial court erred when it sentenced him to maximum, consecutive sentences for two reasons. He first argues that the trial court erred when sentencing him to maximum sentences because those sentences were not "justified within the statutory criteria." Lavelle next contends that his sentences for kidnapping and felonious assault should have been merged since they are allied offenses of similar import. Finally, Lavelle argues that ordering that he serve his sentences consecutively is excessive.
 {¶ 75} The statutes governing felony sentencing in Ohio used to require that a trial court make particular findings before sentencing a criminal defendant to maximum and consecutive sentences. However, inState v. Foster, 109 Ohio St.3d 1, 2006-Ohio-0856, the Ohio Supreme Court found much of Ohio's felony sentencing scheme unconstitutional because that scheme violated a defendant's right to a jury trial. Now, a trial court which is sentencing a felony offender "must carefully consider the statutes that apply to every felony case. Those include R.C. 2929.11, which specifies the purposes of sentencing, and R.C. 2929.12, which provides guidance in considering factors relating to the seriousness of the offense and recidivism of the offender. In addition, the sentencing *Page 15 
court must be guided by statutes that are specific to the case itself."State v. Mathis, 109 Ohio St.3d 54, 2006-Ohio-0855, at ¶ 38.
 {¶ 76} Lavelle argues the trial court erred when sentencing him to maximum sentences because the trial court did not make any of the findings listed in R.C. 2929.14(C) and did not give the reasons in support of that finding. However, the statutes he is relying on, R.C. 2929.14(C) and R.C. 2929.19(B)(2)(d), were found unconstitutional inFoster and severed from the statutory scheme. Foster at paragraphs one and two of the syllabus. Thus, this court cannot use the trial court's failure to follow these statutes as a basis for reversing Lavelle's sentence.
 {¶ 77} Many of the statutory factors which make this a more serious form of the offense apply to this case. For instance, the victim suffered severe physical harm as a result of the crimes (R.C. 2929.12(B)(2)), her advanced age exacerbated the injuries she suffered (R.C. 2929.12(B)(1)), and Lavelle's relationship to the victim facilitated the offense (R.C. 2929.12(B)(7)). The seriousness of the offenses could be mitigated somewhat by Lavelle's mental health issues. However, that is balanced by the fact that he has a relatively recent conviction for battery on a non-cohabitating former spouse in California. Given the facts of this case, the record supports the trial court's decision to sentence Lavelle to maximum sentences.
 {¶ 78} Lavelle next argues that the trial court could not sentence him to consecutive sentences since he did not have a separate animus for the two offenses. R.C. 2941.23 defines when the sentences for two offenses must be merged as follows:
 {¶ 79} "(A) Where the same conduct by a defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 {¶ 80} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
 {¶ 81} Thus, the test for determining if the punishments for two crimes should be *Page 16 
merged under this statute is two-pronged. The first prong is whether the elements of the crimes "correspond to such a degree that the commission of one crime will result in the commission of the other." State v.Rance, 85 Ohio St.3d 632, 636, 1999-Ohio-0291, quoting State v.Blankenship (1988), 38 Ohio St.3d 116, 117. Under this analysis, the elements of the crimes are compared in the abstract. Rance at 636. "If the elements do not so correspond, the offenses are of dissimilar import and the court's inquiry ends — the multiple convictions are permitted." Id., citing R.C. 2941.25(B). However, if the elements do so correspond, the court must move to the second prong of the test — whether the crimes were committed separately or with separate animus. Id. at 638-639, citing R.C. 2941.25(B) and State v. Jones, 78 Ohio St.3d 12, 18, 1997-Ohio-0038. If the crimes were committed separately or with separate animus, the defendant may be convicted and sentenced to each of the multiple offenses. Id. at 636. But if it is determined that they were not committed separately or with separate animus then a defendant cannot be convicted and sentenced to each crime separately. Id.
 {¶ 82} In this case, Lavelle cannot overcome the first prong of this test. He was convicted of felonious assault in violation of R.C. 2903.11(A)(2) and kidnapping in violation of R.C. 2905.01(A)(3), each of which contain elements not found in the other. For example, Lavelle had to knowingly cause or attempt to cause physical harm to Macioce to be guilty of felonious assault. In contrast, he had to restrain her liberty by force, threat, or deception in order to terrorize or cause serious physical harm to Macioce to be guilty of kidnapping. The offense of kidnapping does not require that Lavelle actually cause any injury to Macioce. Likewise, the offense of felonious assault does not require that Lavelle restrained Macioce in any way. Thus, the two offenses are not allied offenses of similar import and the trial court could properly impose a sentence for either offense.
 {¶ 83} Finally, Lavelle contends that ordering that his sentences be served consecutively is error because it is not necessary to do so in order to adequately protect the public and punish him for his offenses. Once again, Lavelle is basing his arguments on statutes which have been declared unconstitutional by the Ohio Supreme Court. Lavelle cites to R.C. 2929.14(E)(4) as much of the basis for his argument. Yet the Ohio *Page 17 
Supreme Court found this statute unconstitutional in Foster and severed it as well. Foster at paragraphs three and four. Lavelle complains that the Ohio Supreme Court's remedy in Foster is not actually much of a remedy for felony defendants. However, we must follow the Ohio Supreme Court's mandates and must apply Foster as it is written.
 {¶ 84} For these reasons, the arguments in Lavelle's sixth assignment of error are without merit.
 Conclusion {¶ 85} Lavelle challenges both his convictions and sentence in many ways. However, all of those challenges are without merit. Accordingly, the judgment of the trial court is affirmed.
 Donofrio, J., Vukovich, J. *Page 1