[Cite as *State v. Boyd*, 2013-Ohio-1333.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Sheila G. Farmer, J. |
| -vs- | : | |
| | : | Case No. 12CA23 |
| GAVON J. BOYD | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:  Appeal from the Richland County Court of
Common Pleas, Case No. 2011 CR 0631
H

JUDGMENT:  AFFIRMED IN PART, REVERSED IN
PART, AND REMANDED

DATE OF JUDGMENT ENTRY:  March 27, 2013

APPEARANCES:

For Appellant:

OFFICE OF THE OHIO PUBLIC
DEFENDER
KRISTOPHER A. HAINES
250 East Broad Street, Ste. 1400
Columbus, OH 43215

For Appellee:

JAMES J. MAYER, JR.
RICHLAND COUNTY PROSECUTOR
JOHN C. NIEFT
38 South Park St.
Mansfield, OH 44902

*Delaney, P.J.*

{¶1}   Appellant Gavon J. Boyd appeals from the February 27, 2012 judgment entry of conviction and sentence in the Richland County Court of Common Pleas. Appellee is the State of Ohio.

*FACTS AND PROCEDURAL HISTORY*

{¶2}   This case arose on September 5, 2011 on King Street in Mansfield, Ohio.  Sommer Burdette was driving her own car with her friend and neighbor Misty Taylor in the front passenger seat.  Burdette purportedly had $2400 hidden inside her bra.  She stopped at her grandmother's house on Arnold Street to pick up additional cash while Taylor waited in the car.

{¶3}   Burdette got back into her car and pulled out of the driveway.  She turned onto King Street and slowed down due to a group of people in the roadway.  A man jumped into the back seat of Burdette's car and put a knife to her throat, stating "Bitch, I'm going to kill you, give me everything you got."  Burdette did not see the man's face while he was in the car because she faced forward.  The man kept the knife at Burdette's throat.  Burdette grabbed at the knife to push it away, badly slicing her hand on its jagged edge.

{¶4}   He told both girls to pull down their shirts to check whether they had anything hidden in their bras.  Burdette gave up her purse, phone, and all of her cash. Taylor gave up her purse and phone and testified she had no cash with her that day. Taylor placed her belongings and Burdette's into a backpack-style "bookbag" the man carried.

{¶5} After robbing the girls the man jumped out of the car, taking the keys. He threw the keys and told Burdette, "Bitch, there's your keys." Burdette ran to grab the keys, jumped back in the car, and drove away. She testified the assailant briefly chased after the car and she saw his face; she did not recognize him. He then continued walking on along the road.

{¶6} Burdette soon encountered Brian Nelson, an Ohio State Highway Patrol trooper, in his cruiser and flagged him down. She told Nelson what happened and described the assailant as a tall, skinny black male wearing dark jeans, a dark leather-type coat, a white t-shirt, a hood, and carrying a gray and black bookbag and a large knife.

{¶7} Nelson noted Burdette was frantic and terrified. Her hand was cut and bleeding. Nelson radioed the description provided by Burdette and looked for the suspect. Sgt. James Bryan of the Ohio State Highway Patrol heard Nelson's dispatch and went to the scene where Nelson was speaking with the victims. After obtaining the description of the suspect and the general location of the robbery, Bryan went to look for the suspect. He drove around the neighborhood for about 10 minutes when he spotted appellant crossing State Route 39. Bryan had been looking for a man with a backpack, which appellant was carrying. Bryan pulled up to appellant and grabbed him. Appellant did not resist. Bryan relinquished custody of appellant at the scene to the Mansfield Police Department, which ultimately handled the investigation and arrest.

{¶8} Officer James Perry of the Mansfield Police Department asked appellant if he had anything to do with the robbery and he denied it. Perry said he matched the

description provided, and testified at trial that the backpack appellant was carrying contained Misty Taylor's purse and some of her personal belongings.

{¶9} Sommer Burdette's cash and personal items were never found, nor was the knife.

{¶10} Burdette and Taylor were brought to the area where police were holding appellant in a cruiser. They identified him as the man who robbed them. Officers present for the identification noted appellant indicated he knew Taylor, referring to her as his girlfriend and yelling at her to "tell the truth."

{¶11} Appellee's forensic evidence at trial included DNA testimony. Sommer Burdette was the source of DNA found in a bloodstain on the backpack appellant was found carrying and in a bloodstain found on appellant's leather jacket.

{¶12} Appellant testified on his own behalf at trial. He claimed he knew Misty Taylor and that she had contacted him to buy drugs from his friend "Deshawn." "Deshawn" contrived to rob Misty and the other girl, unbeknownst to appellant. When appellant found out about the robbery, he recovered Misty Taylor's items with the intention of returning them to her. He claimed police would not listen to his story, Misty Taylor would not confirm it, and "Deshawn" took off for Detroit so he would not be implicated in the robbery.

{¶13} Appellant was charged by indictment with two counts of robbery, two counts of theft, and one count of felonious assault. He entered pleas of not guilty and the case proceeded to trial by jury. Appellant was found guilty as charged, and the trial court sentenced him to an aggregate prison term of 7 years. Upon inquiry by defense counsel, the trial court stated appellant was sentenced to concurrent four-

year terms on each robbery count, concurrent with two consecutive terms of six months each for the thefts, consecutive with three years for the count of felonious assault.

{¶14} Appellant now appeals from the judgment entry of conviction and sentence.

{¶15} Appellant raises two Assignments of Error:

{¶16} "I.   TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF MR. BOYD'S RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION. (STATEMENT OF THE CASE AND FACTS; TR. 91-96, 98-159, 174-202, 205-44, 262-68, 273-94, 301-15.)"

{¶17} "II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR DURING MR. BOYD'S SENTENCING HEARING IN VIOLATION OF R.C. 2941.25, R.C. 2929.14, R.C. 2929.18, R.C. 2929.19, AND R.C. 2947.23 AND IN VIOLATION OF MR. BOYD'S RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION.   (OCT. 6, 2011 INDICTMENT; FEB. 8, 2012 BILL OF PARTICULARS; FEB. 27, 2012 SENTENCING ENTRY; FEB. 27, 2012 STATEMENT OF FACT; TR. 91-96, 98-129, 262-68, 273-77, 301-15.)"

I.

{¶18} In his first assignment of error, appellant argues he received ineffective assistance of trial counsel with respect to a number of alleged errors.

{¶19} To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. *See, Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158 (1955).

{¶20} "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland,* 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690.

{¶21} Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

{¶22} When counsel's alleged ineffectiveness involves the failure to pursue a motion or legal defense, this actual prejudice prong of *Strickland* breaks down into two components. First, the defendant must show that the motion or defense "is

meritorious," and, second, the defendant must show that there is a reasonable probability that the outcome would have been different if the motion had been granted or the defense pursued. See *Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S.Ct. 2574, 2583, 91 L.Ed.2d 305 (1986); see, also, *State v. Santana*, 90 Ohio St.3d 513, 739 N.E.2d 798 (2001), citing *State v. Lott*, 51 Ohio St.3d 160, 555 N.E.2d 293 (1990).

{¶23} Appellant's first instance of alleged ineffective assistance is counsel's failure to file a motion to suppress the search of appellant's backpack and the apparent show-up procedure incidentally described at trial in which Burdette and Taylor identified appellant after his apprehension.

{¶24} Trial counsel's failure to file a suppression motion does not per se constitute ineffective assistance of counsel. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 2000-Ohio-0448. Counsel can only be found ineffective for failing to file a motion to suppress if, based on the record, the motion would have been granted. *State v. Lavelle*, 5th Dist. No. 07 CA 130, 2008-Ohio-3119, at ¶ 47; *State v. Cheatam*, 5th Dist. No. 06-CA-88, 2007-Ohio-3009, at ¶ 86. Furthermore, "[w]here the record contains no evidence which would justify the filing of a motion to suppress, the appellant has not met his burden of proving that his attorney violated an essential duty by failing to file the motion." *State v. Drummond*, 111 Ohio St.3d 14, 41, 2006-Ohio-5084, 854 N.E.2d 1038, quoting *State v. Gibson*, 69 Ohio App.2d 91, 95, 430 N.E.2d 954 (8th Dist.1980). See also, *State v. Suiste*, 5th Dist. No. 2007 CA 00252, 2008-Ohio-5012. In addition, deficient performance cannot be demonstrated where the record fails to disclose the circumstances surrounding the alleged Fourth Amendment violation. See, e.g., *State v. Tibbetts*, 92 Ohio St.3d 146, 166, 2001-Ohio-132, 749 N.E.2d 226

(finding no violation of counsel's duty where record failed to reveal circumstances surrounding police's seizure). Trial counsel's decision not to file a motion to suppress may be a matter of trial strategy, including counsel's reasonable assessment of whether such a motion is likely to succeed and recognition that filing a motion to suppress has risks. *Madrigal*, 87 Ohio St.3d at 389. Furthermore, in order to satisfy the prejudice prong of the *Strickland* test, a defendant must demonstrate that there was a reasonable probability that the motion to suppress would have been granted. See, e.g., *State v. Fair*, 2nd Dist. No. 24120, 2011–Ohio–3330, ¶ 27. See also *Kimmelman* at 390–391.

{¶25} We disagree with appellant's conclusory assertions that the search of appellant's backpack and the show-up procedure were constitutionally infirm. Given the limited record, we cannot conclude that there is a reasonable probability that a motion to suppress would have been successful. See, e.g., *Fair* at ¶ 27, 46. Accordingly, appellant has not satisfied the second prong of the Strickland test and, therefore, has not demonstrated that he received ineffective assistance of counsel with respect to the failure to file a motion to suppress.

{¶26} Appellant next points to three comments by appellee to which defense trial counsel raised no objection and which arguably comment upon the appellant's right to remain silent.  In the context of the entire trial, we find defense trial counsel was not deficient in failing to object to these statements. While these isolated remarks may have been objectionable, counsel may have deliberately chosen not to object to avoid drawing the jury's attention to the comments. Trial strategy and even debatable trial tactics do not establish ineffective assistance of counsel. *State v. Conway*, 109

Ohio St.3d 412, 2006–Ohio–2815, ¶ 101. Strategic choices made after substantial investigation "will seldom if ever" be found wanting. *Strickland*, supra, 466 U.S. at 681. Moreover, the failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel. *State v. Crawford*, 5th Dist. No. 07 CA 116, 2008–Ohio–6260, ¶ 72, appeal not allowed, 123 Ohio St.3d 1474, 2009–Ohio–5704, 915 N.E .2d 1255, citing *State v. Fears*, 86 Ohio St.3d 329, 347, 715 N.E.2d 136 (1999). Ultimately we find no reasonable probability the outcome of the trial would have been different had such objections been raised. See, *State v. Graber*, 5th Dist. No.2002CA00014, 2003–Ohio–137, ¶ 154, appeal not allowed, 101 Ohio St.3d 1466, 2004–Ohio–819, 804 N.E.2d 40.

{¶27} Finally, appellant cites trial counsel's failure to object to (what he claims are) flawed jury instructions.  Appellant offers no authority for his assertion that the jury instructions are in error, nor do we find any.  More importantly, appellant cannot prevail upon his ineffective assistance argument because we fail to see how the outcome of the trial would have been different even if trial counsel had objected to the jury instructions. Appellant again fails to satisfy the second prong of the ineffective assistance test.

{¶28} We find appellant did not receive ineffective assistance of trial counsel and therefore overrule his first assignment of error.

II.

{¶29} In his second assignment of error, appellant raises a number of sentencing errors.  We will address each individually.

*Allied Offenses of Similar Import*

{¶30} With respect to victim Sommer Burdette, appellant was indicted upon, convicted of, and sentenced upon one count of robbery pursuant to R.C. 2911.02(A)(1) and one count of felonious assault pursuant to R.C. 2903.11(A)(2). Appellant argues the trial court committed plain error when it failed to merge these offenses for purposes of sentencing; we disagree.

{¶31} R.C. 2941.25 states as follows:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶32} In *State v. Johnson*, the Ohio Supreme Court modified the test for determining whether offenses are allied offenses of similar import. 128 Ohio St.3d 1405, 2010–Ohio–6314. The Court directed us to look at the elements of the offenses in question and determine whether or not it is possible to commit one offense and

commit the other with the same conduct. If the answer to such question is in the affirmative, the court must then determine whether or not the offenses were committed by the same conduct. If the answer to the above two questions is yes, then the offenses are allied offenses of similar import and will be merged. If, however, the court determines that commission of one offense will never result in the commission of the other, or if there is a separate animus for each offense, then the offenses will not merge according to *Johnson*, supra.

{¶33} With respect to victim Sommer Burdette, appellant was convicted of one count of robbery pursuant to R.C. 2911.02(A)(1), which states in pertinent part, "No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense shall…[h]ave a deadly weapon on or about the offender's person or under the offender's control."  He was also convicted of one count of felonious assault pursuant to R.C. 2903.11(A)(2), which states, "No person shall knowingly…[c]ause or attempt to cause physical harm to another…by means of a deadly weapon or dangerous ordnance."  We have previously found, under a *Johnson* analysis, it is possible to commit robbery and felonious assault with the same conduct.  *State v. Jones*, 5th Dist. No. 10 CA 50, 2011-Ohio-2306, ¶ 23, appeal not allowed, 130 Ohio St.3d 1496, 2011-Ohio-6556, 958 N.E.2d 958.  Here as in *Jones*, however, we must answer the second step of the *Johnson* analysis in the negative: the evidence in this case supports the conclusion appellant entered the car and put the knife to Burdette's neck to force her to give up her money and personal items, and then continued to hold the knife against her neck to subdue her, to the extent that she tried to push it away, seriously cutting herself and slicing nerves in her hand.  Appellant's actions thus

constituted both separate conduct and separate animus under these circumstances. *Id.* Appellant was properly convicted of and sentenced upon both counts.

{¶34} We reach a different result under *Johnson* when we turn to appellant's next argument, however. With respect to both victims Sommer Burdette and Misty Taylor, appellant was convicted of two counts each of robbery pursuant to R.C. 2911.02(A)(1), supra, and theft pursuant to R.C. 2913.02(A)(1) ["No person, with purpose to deprive the owner of properly or services, shall knowingly obtain or exert control over either the property or services…[w]ithout the consent of the owner or person authorized to give consent."] Appellant argues robbery and theft are allied offenses of similar import under these circumstances, and should have merged for sentencing. Appellee concedes the robbery and theft offenses should have merged for purposes of sentencing and on that basis we remand for resentencing.

*Consecutive Prison Terms*

{¶35} Appellant contends he should not have been sentenced to consecutive prison terms, and we agree. 2011 Am.Sub.H.B. No. 86, which became effective on September 30, 2011, revived the language provided in former R.C. 2929.14(E) and moved it to R.C. 2929.14(C)(4). The revisions to the felony sentencing statutes under 2011 Am.Sub.H.B. No. 86 now require a trial court to make specific findings when imposing consecutive sentences. R.C. 2929.14(C)(4) provides, in relevant part:

> (4) If multiple prison terms are imposed on an offender for convictions of multiple offenses the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future

crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶36} In Section 11, the legislature explained that in amending former R.C. 2929.14(E)(4), it intended "to simultaneously repeal and revive the amended language in those divisions that was invalidated and severed by the Ohio Supreme Court's decision in *State v. Foster*, 109 Ohio St.3d 1(2006)." The General Assembly further explained that the amended language in those divisions "is subject to reenactment

under the United States Supreme Court's decision in *Oregon v. Ice*, 555 U.S. 160 (2009), and the Ohio Supreme Court's decision in *State v. Hodge*, —— Ohio St.3d —— –, Slip Opinion No.2010–Ohio–6320 (2010)." Thus, it is the legislature's intent that courts interpret the language in R.C. 2929.14(C)(4) in the same manner as the courts did prior to *State v. Foster*, 109 Ohio St.3d 1, 2006–Ohio–856, 845 N.E.2d 470.

{¶37} We have consistently stated that the record must clearly demonstrate that consecutive sentences are not only appropriate, but are also clearly supported by the record. See, *State v. Fauntleroy*, 5th Dist. No. CT2012–0001, 2012–Ohio–4955; *State v. Bonnell*, 5th Dist. No. 12CAA3022, 2012–Ohio–515.  Our review on appeal of any subsequent resentencing will be directed at looking at the entire trial court record to determine if that record supports the trial court's findings that the R.C. 2929.14(C) factors were met. See, *State v. Alexander*, 1st Dist. Nos. C–110828, C–110829, 2012–Ohio–3349, ¶ 18; *State v. Frasca*, 11th Dist.2011–T–0108, 2012–Ohio–3746, ¶ 57.

{¶38} In this case, findings supporting consecutive sentences were not made on the record at the sentencing hearing.  The trial court's sentencing entry is a checklist form with boxes to be marked, and although the trial court checked the findings for R.C. 2929.14(C)(4)(b), the initial findings under R.C. 2929.14(C)(4) are not marked.  While this appears to be a scrivener's error that, standing alone, might not ordinarily merit remand, under the unique circumstances of this case we find the trial court did not properly impose consecutive sentences and so remand the matter for resentencing on that basis as well.

*Restitution and Court Costs*

{¶39} Finally, appellant challenges the trial court's orders with respect to restitution and court costs, and appellee concedes those were ordered without consideration of the proper statutory factors. We therefore remand this matter for consideration of appellant's present and future ability to pay restitution and imposition of court costs in open court.

{¶40} Appellant's second assignment of error is sustained in part and overruled in part.

{¶41} The judgment of the Richland County Court of Common Pleas is therefore affirmed in part and reversed in part, and this matter is remanded for resentencing.

By: Delaney, P.J. and

Farmer, J. concur;

Hoffman, J. concurs in part and dissents in part.


_____
HON. PATRICIA A. DELANEY


_____
HON. WILLIAM B. HOFFMAN


_____
HON. SHEILA G. FARMER

*Hoffman, J., concurring in part and dissenting in part*
ASSIGNMENT OF ERROR I

{¶42} I concur in the majority's analysis and disposition of that portion of Appellant's first assignment of error as it pertains to the show-up procedure and jury instructions.

{¶43} I concur in the majority's decision to overrule that portion of Appellant's first assignment of error asserting an ineffective assistance of counsel claim based upon his counsel's failure to file a motion to suppress evidence derived from the search of Appellant's backpack. I agree with Appellee there is not enough evidence in this record regarding the search of Appellant's backpack to determine whether a suppression motion would be viable in this case, and the proper remedy is post conviction review. (Appellee's brief at p.5). As such, I write to note I do not believe our overruling of this claim would necessarily bar future review of this issue under res judicata principles.

{¶44} As to Appellant's argument claiming ineffective assistance of counsel for failing to object to the prosecutor's comment upon his right to remain silent, I also concur in the majority's decision to overrule this claim. However, I do not believe counsel's failure to do so can be defended as trial strategy. While the majority concludes the prosecutor "arguably" commented on Appellant's right to remain silent, I conclude the comments were improper. Nevertheless, I agree to overrule this claim because I find there is no reasonable probability the comments changed the outcome of the trial.

ASSIGNMENT OF ERROR II

**{¶45}** I respectfully disagree with the majority's conclusion robbery and felonious assault were not allied offenses under the facts of this case.

**{¶46}** The majority finds Appellant's action<u>s</u> [emphasis added] constituted both separate conduct and separate animus. (Majority Opinion at ¶33). While I find separate conduct was involved, it was conduct by two different actors. Appellant's conduct was holding the knife to the victim's neck during the commission of the robbery. The victim's act of pushing the knife away resulting in the injury to her hand does not constitute separate conduct on Appellant's part. Based upon these circumstances, I do not agree with the majority's conclusion Appellant's actions constituted both separate conduct and separate animus.

**{¶47}** Lastly, I concur in the majority's analysis and decision to sustain Appellant's claim the record fails to affirmatively demonstrate the trial court made the requisite findings necessary to impose consecutive sentences and also to reverse and remand the trial court's order with respect to restitution and court costs.

_____
HON. WILLIAM B. HOFFMAN

[Cite as *State v. Boyd*, 2013-Ohio-1333.]

IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| GAVON J. BOYD | : | |
| | : | |
| | : | Case No. 12CA23 |
| Defendant-Appellant | : | |

For the reasons stated in our accompanying Opinion on file, the judgment of the Richland County Court of Common Pleas is affirmed in part, reversed in part, and remanded for further proceedings consistent with this Opinion. Costs assessed equally between appellant and appellee.

_____
HON. PATRICIA A. DELANEY

_____
HON. WILLIAM B. HOFFMAN

_____
HON. SHEILA G. FARMER