[Cite as *State v. Hill*, 2026-Ohio-273.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO, | Case No. 2025CA00028 |
| Plaintiff - Appellee | <u>Opinion And Judgment Entry</u> |
| -vs- | Appeal from the Stark County Court of Common Pleas, Case No. 2024 CR 2455 A |
| ANTHONY RAMON HILL, | Judgment: Affirmed |
| Defendant - Appellant | Date of Judgment Entry: January 29, 2026 |

**BEFORE:** Craig R. Baldwin; Robert G. Montgomery; Kevin W. Popham, Judges

**APPEARANCES:** KYLE L. STONE, Prosecuting Attorney, CHRISTOPHER A. PIEKARSKI, Assistant Prosecuting Attorney, for Plaintiff-Appellee; D. COLEMAN BOND, for Defendant-Appellant.

*Baldwin, P.J.*

{¶1} The appellant, Anthony Ramon Hill, appeals his conviction on two counts of Trespass in a Habitation When a Person is Present or Likely to be Present, and two counts of Criminal Damaging. Appellee is the State of Ohio. For the reasons set forth below, we affirm the decision of the trial court.

**STATEMENT OF FACTS AND THE CASE**

{¶2} On November 27, 2024, M.B. was asleep in her apartment. She awoke around midnight, feeling as though she was being watched. M.B. tried to go back to sleep but was unable to do so because she still had a feeling that someone was watching her. As she became more fully awake, she heard a man in her room say "oh crap," and saw

him run out of her bedroom. M.B. did not get a good look at the man's face, but noted the clothing he was wearing. M.B. followed the man out of her bedroom and into the living room, observing only his back. She asked him if he needed something, and he ran out the front door. As the man ran out the front door, M.B. noticed that the lock was broken.

{¶3}   M.B. then heard someone "digging through the drawers and cabinets," and saw a female in her kitchen. M.B. asked the female, "[I]s there anything you're looking for? Can I help you?" The woman looked around and replied, "[n]o . . . I think I'm in the wrong apartment." The female then "took off," but not before M.B. got a good look at her face, "because [she] ran right into her." M.B. then called the police.

{¶4}   Officer Anthony Angelo of the Canton Police Department arrived on the scene. He asked M.B. some initial questions upon his arrival and took photos of M.B.'s damaged door and a broken window screen, all of which were later admitted into evidence at trial. As Officer Angelo was exiting M.B.'s apartment, L.A., from the apartment directly across the hallway from M.B.'s apartment, came into the hallway and told Angelo that her apartment had also been broken into. L.A. informed Officer Angelo that she did not see who entered her apartment, but her son saw someone. L.A.'s son spoke with Officer Angelo and gave him a description of the man he saw in L.A.'s apartment.

{¶5}   Meanwhile, additional officers responded to the scene, and Officer Angelo asked them to search the general vicinity of the apartment complex for the two suspects – a male and female, both wearing dark clothing, and the female wearing a black hair bonnet. Officers noticed two people who matched the suspects' description, wearing all dark-colored clothing, walking together approximately 100 to 150 yards from M.B.'s apartment building. The officers quickly drove over to the couple and ordered them both

to stop. The female stopped but the male did not, instead walking around the back of a nearby apartment building. One of the officers spoke with the female, while the other officer went around back of the apartment building to search for her companion. The female identified herself as LaKenya Jones, and stated that she lived in the apartment building. Jones gave the officers her apartment number and permission to search her apartment for her companion. Officers went to Jones' apartment to search for him. They opened the unlocked door, announced themselves, and instructed anybody inside to make their presence known, but were met with silence. When the instructions were repeated, with an additional warning that a K-9 would be sent in, the appellant immediately announced his presence and emerged from the back bedroom within seconds, pleading with the officers to not send in a dog. The appellant feigned confusion, asked what was going on, and told the officers that he "just woke up"; however, one of the officers noticed that the appellant was wearing shoes.

{¶6}   Jones and the appellant were brought to the scene for a show-up identification. M.B., who had run face-to-face into the female in her apartment and thus got a good look at her, positively identified the female suspect, Lakenya Jones, with 100 percent certainty as the woman she saw in her apartment. Jones confessed at the scene, admitting that she had entered the apartments. While the appellant did not make any admissions, he was arrested and transported to jail. While in the back of a police vehicle, the appellant made a number of spontaneous and unsolicited statements, such as "[Y]ou can't call me a burglar, call me a trespasser"; and, "[W]hat happened? I kicked in a door, is that what you're going to say."

{¶7}   The appellant was indicted on January 7, 2025, on the following:

- Count I: Trespass in a Habitation When a Person is Present or Likely to be Present in violation of R.C. 2911.12(B), a felony of the fourth degree;

- Count II: Trespass in a Habitation When a Person is Present or Likely to be Present in violation of R.C. 2911.12(B), a felony of the fourth degree;

- Count III: Criminal Damaging or Endangering in violation of R.C. 2909.06(A)(1)(B), a misdemeanor of the second degree; and,

- Count IV: Criminal Damaging or Endangering in violation of R.C. 2909.06(A)(1)(B), a misdemeanor of the second degree.

The appellant pleaded not guilty at his January 10, 2025, arraignment.

{¶8} The matter proceeded to a jury trial on February 11, 2025. The appellee presented the testimony of M.B., Officer Angelo, Officer Christian Paris, and Officer Zachary Coblentz. The officers' testimony included the presentation of body-cam video footage, both by the appellee and the appellant's trial counsel. The appellee rested and, outside of the presence of the jury, the appellant's trial counsel told the trial court that it had made a mistake in playing the entire body camera video from the incident due to the fact that one of the witnesses did not appear to testify for the appellee. The appellant's trial counsel argued that the body camera video contained prejudicial hearsay and an identification of appellant that would not have otherwise been presented to the jury, moved for acquittal pursuant to Crim.R. 29, and requested that the trial court declare a mistrial due to the fact that the appellant did not receive effective assistance of counsel.

{¶9} The trial court denied both of the appellant's motions, allowed the portions of the body camera footage played by the appellee during trial to be marked as State's Exhibit 3, 4, and 5, and allowed the full body camera footage played by the appellant

during trial to be marked as Defendant's Exhibit A. The appellant rested without presenting any evidence. The parties made closing arguments, the trial court instructed the jury, and the jury retired to deliberate.

{¶10} The trial court reviewed the exhibits with the parties to prepare them for the jury deliberations, during which the appellant indicated that the full body camera video that was played during trial and identified as Defense Exhibit A had not been formally offered into evidence by the appellant, and the appellant therefore objected to its admission into evidence. The trial court admitted Defense Exhibit A over the appellant's objection.

{¶11} The jury returned a guilty verdict on all charges. The appellant was thereafter sentenced to a prison term of nine months each on Counts I and II, which were ordered to be served consecutively; and, to jail terms for Count III and IV, which were ordered to be served concurrently. Thus, the appellant's aggregate sentence was a prison term of eighteen months.

{¶12} The appellant filed a timely appeal in which he sets forth the following three assignments of error:

{¶13} "I. THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION AGAINST APPELLANT, AND THE CONVICTION MUST BE REVERSED."

{¶14} "II. THE APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED, AND MUST BE REVERSED."

{¶15} "III. THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS RIGHTS UNDER THE 6TH AND 14TH AMENDMENTS

TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSITUTION [SIC]."

**ASSIGNMENT OF ERROR NUMBERS I & II**

{¶16} The appellant argues in his first and second assignments of error that his conviction is not supported by sufficient evidence, and is against the manifest weight of the evidence. We disagree.

{¶17} Although sufficiency of the evidence and manifest weight entail different legal concepts, both entail a review of the record, and as such we shall address the appellant's assignments of error numbers one and two together.

***Standard Of Review***

{¶18} Assignment of error number one challenges the sufficiency of the evidence, while assignment of error number two challenges the manifest weight of the evidence. Sufficiency of the evidence was addressed by the Ohio Supreme Court in *State v. Worley,* 2021-Ohio-2207, as follows:

> The test for sufficiency of the evidence is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102, 684 N.E.2d 668 (1997), fn. 4, and following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). " 'Proof beyond a reasonable doubt' is proof of such character that an ordinary person would

be willing to rely and act upon it in the most important of the person's own affairs." R.C. 2901.05(E). A sufficiency-of-the-evidence challenge asks whether the evidence adduced at trial "is legally sufficient to support the jury verdict as a matter of law." *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 219.

*Id.* at ¶57. Thus, a review of the constitutional sufficiency of evidence to support a criminal conviction requires a court of appeals to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

{¶19} Manifest weight of the evidence, on the other hand, addresses the evidence's effect of inducing belief. *State v. Thompkins,* 78 Ohio St.3d 380, 386–387 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 1997–Ohio–355. The *Thompkins* Court stated:

Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief.*" (Emphasis added.) Black's, *supra,* at 1594.

*Id.* at 387. The Court stated further:

When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a " 'thirteenth juror' " and disagrees with the factfinder's resolution of the conflicting testimony. *Tibbs,* 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720–721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

*Id.* In addition, the Court stated in *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77 (1984):

"* * * [I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Id.* at 80, fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191–192 (1978).

***Analysis***

**{¶20}** The evidence presented during trial included the testimony of victim M.B. and officers Angelo, Paris, and Coblentz. L.A., the resident of the apartment across from M.B. whose apartment had also been broken into, was subpoenaed for trial, but failed to appear. L.A.'s son was not subpoenaed.

**{¶21}** M.B. testified that she awoke in the middle of the night to find a man in her bedroom staring at her. The man was over six-feet tall and wearing a black hoodie and dark pants. M.B. admitted that she did not get a good look at the man's face because once he saw that she was awake he immediately turned and fled from her apartment. M.B. chased after the man, and in doing so confronted a female wearing black clothing and a black hair bonnet rooting through M.B.'s belongings in the kitchen. The woman fled from the apartment, but not before M.B. clearly saw the woman's face.

**{¶22}** When the police arrived only minutes later, they observed a male and female - the appellant and LaKenya Jones, respectively, wearing all dark clothing and walking together in the same apartment complex, only about 100 to 150 yards from M.B.'s apartment. The appellant was carrying a black hoodie over his shoulder, and Jones was wearing a black hair bonnet. The appellant disregarded the officers' orders to stop, and instead fled into a nearby apartment building. Jones, however, stopped, and gave the officers consent to search her apartment for her companion. M.B. later identified Jones with 100 percent certainty as the woman that was inside her apartment.

**{¶23}** When officers searched Jones' apartment they announced their presence, requested anyone inside to come out, and warned that a K-9 was going to be sent in. The appellant then emerged from the back bedroom, fully clothed and wearing shoes, but wearing a different shirt and no longer carrying his hoodie. Apart from the shirt, officers noted that everything else about the appellant matched M.B.'s description of the intruder she saw watching her as she slept.

**{¶24}** While in the officers' police cruiser en route to the jail, the appellant made a number of spontaneous statements, including: "[Y]ou can't call me a burglar, call me a trespasser"; "[W]hat happened? I kicked in a door, is that what you're going to say?", and, additional comments such as "she opened the door, she let me in, she went in first, I followed."

**{¶25}** The jury heard the testimony of the witnesses and viewed all the evidence, including circumstantial evidence regarding damage to the door of the apartment across from M.B.'s apartment, which indicated that said apartment had also been broken into in the same manner as M.B.'s apartment. The jury deliberated, and found the appellant guilty on all counts. We cannot say, after viewing the evidence in the light most favorable to the prosecution, that no rational trier of fact could have found the essential elements of the crimes with which the appellant was charged beyond a reasonable doubt. Nor can we say that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The appellant's assignments of error numbers one and two are, therefore, without merit.

## ASSIGNMENT OF ERROR NUMBER III

{¶26} The appellant argues in his third assignment of error that he was denied effective assistance of counsel in violation of his rights under both the United States Constitution and the Ohio Constitution. We disagree.

### *Standard Of Review*

{¶27} The standard of review for ineffective assistance of counsel was set forth in the seminal case of *Strickland v. Washington,* 466 U.S. 668 (1984), and was discussed by this court in *Mansfield v. Studer,* 2012-Ohio-4840 (5th Dist.):

> A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell* (1993), 506 U.S. 364, 113 S.Ct. 838 (1993); *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052(1984); *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373(1989).

> In order to warrant a finding that trial counsel was ineffective, the petitioner must meet both the deficient performance and prejudice prongs of *Strickland* and *Bradley. Knowles v. Mirzayance,* 556 U.S. 111, 129 S.Ct. 1411, 1419, 173 L.Ed.2d 251(2009).

> To show deficient performance, appellant must establish that "counsel's representation fell below an objective standard of

reasonableness." *Strickland v. Washington,* 466 U.S. at 688, 104 S.Ct. at 2064. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Strickland v. Washington* 466 U.S. at 687, 104 S.Ct. at 2064. Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process. *Strickland v. Washington* 466 U.S. at 688, 104 S.Ct. 2052 at 2065.

Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland v. Washington,* 466 U.S. 668 at 689,104 S.Ct. at 2064.

In light of "the variety of circumstances faced by defense counsel [and] the range of legitimate decisions regarding how best to represent a criminal defendant," the performance inquiry necessarily turns on "whether counsel's assistance was reasonable considering all the circumstances." *Strickland v. Washington,* 466 U.S. 668 at 689,104 S.Ct. at 2064. At all points, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland v. Washington,* 466 U.S. 668 at 689,104 S.Ct. at 2064.

*Studer, supra,* at ¶¶ 58-61. Thus, in order to prevail on an ineffective assistance of counsel argument the appellant must satisfy two prongs: first, that his trial counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of an essential duty to the appellant; and, second, that the appellant was prejudiced by such the alleged ineffectiveness.

### *Analysis*

{¶28} The appellant was charged with two counts of violating R.C. 2911.12(B), which provides that "[n]o person, by force, stealth, or deception, shall trespass in a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present." In addition, the appellant was charged with two counts of criminal damaging or endangering in violation of R.C. 2090.06, which provides that "[n]o person shall cause, or create a substantial risk of physical harm to any property of another without the other person's consent: (1) knowingly, by any means; (2) recklessly, by means of fire, explosion, flood, poison gas, poison, radioactive material, caustic or corrosive material, or other inherently dangerous

agency or substance." Evidence of M.B.'s damaged door and a broken window screen were admitted into evidence at trial, as well as evidence of damage to the door of the apartment across from M.B., which had also been broken into.

{¶29} The appellant argues that his trial counsel was ineffective because he played Officer Angelo's bodycam video footage in its entirety in anticipation of the testimony of a witness who ultimately did not appear. L.A., the resident of the apartment across from M.B., whose apartment had also been broken into, was subpoenaed for trial but failed to appear. L.A.'s son, who provided a statement to Officer Angelo, was not subpoenaed.

{¶30} The decision of the appellant's trial counsel to play Officer Angelo's bodycam video footage in its entirety was part of counsel's trial strategy, and does not rise to the level of ineffective assistance of counsel. The Ohio Supreme Court addressed ineffective assistance of counsel and trial strategy in the case of *State v. Mohamed,* 2017-Ohio-7468:

> Considering the record as a whole, we determine that Mohamed has failed to overcome the presumption that counsel's failure to request the safe-place-unharmed instruction was the result not of ineffectiveness but of trial strategy.  To show that his trial counsel was ineffective, Mohamed was required to prove that his counsel's performance fell below an objective standard of reasonable representation and that the deficiency prejudiced him. *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Questionable trial strategies and tactics, however, do not rise to the level of ineffective assistance of counsel. *State v. Clayton*, 62 Ohio St.2d 45, 49, 402 N.E.2d 1189 (1980). "To justify a finding of ineffective assistance of counsel, the appellant must overcome a strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *State v. Carter*, 72 Ohio St.3d 545, 558, 1995-Ohio-104, 651 N.E.2d 965 (1995), citing *Strickland* at 689.

In *Clayton*, the defendant was charged with and convicted of two counts of attempted murder. *Clayton* at 45. On appeal, the defendant challenged his counsel's decision not to request jury instructions on lesser included offenses. *Id*. at 46, 48-49. We concluded that the decision not to request the mitigating instruction, despite being a "tactical error" and a "questionable" strategy, did not rise to the level of ineffective assistance of counsel. *Id*. at 48-49. Simply because there was "another and better strategy available" did not mean that counsel provided ineffective assistance. *Id*. at 49.

*Id.* at ¶¶17-19.

**{¶31}** The issue of ineffective assistance of counsel and trial strategy was discussed by this Court in *State v. Colburn*, 2023-Ohio-2933 (5th Dist.):

. . . And a debatable trial strategy does not equal ineffective assistance of counsel. *Southam, supra* at ¶68, quoting *State v. Phillips*, 74 Ohio St.3d 72 85, 1995- Ohio 171, 656 N.E.2d 643 (1995). *State v. Moore*, 6th Dist. Erie No. E-19-009, 2019-Ohio-4609, ¶14. *Accord State v. Boyd*,

5th Dist. Richland No. 12CA23, 2013-Ohio-1333, ¶26. (" Trial strategy and even debatable trial tactics do not establish ineffective assistance of counsel," quoting *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶101, 848 N.E.2d 810) and *State v. McCall*, 5th Dist. Coshocton No. 2017CA0002, 2017-Ohio-7860, ¶43 (" Tactical or strategic trial decisions, including timing of a motion, do not generally constitute ineffective assistance") ….

*Id.* at ¶17. See, also, *State v. Clor,* 2023-Ohio-1355, ¶20 (5th Dist.).

**{¶32}** The decision regarding when and how to question a witness, and when and how to play a video during trial, constitutes a strategic assessment. As set forth in *Strickland, supra,* "[r]epresentation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another." *Id.* at 693. The appellant cannot overcome the first prong of the *Strickland* test, and as such we find his third assignment of error to be without merit.

## CONCLUSION

{¶33} Based upon the foregoing, we overrule the appellant's assignments of error numbers one, two, and three, and affirm the judgment of the Stark County Court of Common Pleas.

{¶34} Costs to appellant.


By: Baldwin, P.J.

Montgomery, J. and

Popham, J. concur.